THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v.
MELESIA AMELIA PRINCE, Defendant and Appellant.

No. CR-68-1.     Decided March 20, 1969.

Miguel Ángel Salicrup Cabello for appellant. Rafael A. Rivera
Cruz, Solicitor General, and Adolfo Negrón Cruz, Assistant
Solicitor General, for The People.

## JUDGMENT

Information was filed against appellant charging the violation of § 4 of Act No. 220 of 1948 on two occasions. Said information reads as follows:

"The prosecuting attorney files information against MELESIA AMELIA PRINCE, k/a 'MILLIE', resident of Building No. 72, Apartment 1370, Lloréns Torres Public Housing Project, Santurce, Puerto Rico, charging two violations of § 4 of Act No. 220 of May 1948, as subsequently amended, Misdemeanor, committed as follows:

### First Charge

Said defendant MELESIA AMELIA PRINCE, k/a 'MILLIE', on or about October 4, 1966, and in Santurce, Puerto Rico, which is part of the jurisdiction of the Superior Court of Puerto Rico,

San Juan Part, illegally, willfully, maliciously, and criminally, had in her possession and control a list of three-digit numbers which are utilized and defendant was utilizing for the unlawful game of bolipool, said materials being connected with the practice of said unlawful game.

## Second Charge

Said defendant, MELESIA AMELIA PRINCE, k/a 'MILLIE', on or about October 11, 1966, and in Santurce, Puerto Rico, which is part of the jurisdiction of the Superior Court of Puerto Rico, San Juan Part, illegally, willfully, maliciously, and criminally had in her possession and control a list of three-digit numbers which are utilized and defendant was utilizing in the illegal game called bolipool, said material being connected with the practice of said illegal game."

To support the charges the prosecuting attorney presented the undercover agent who intervened with appellant. He testified that on October 4, 1966 he was working as undercover agent for the State Police. Defendant "sold bolipool numbers to him for the bolipool game, connected with the prizes drawn in the Puerto Rico Lottery, the first three prizes of the lottery." He affirms that "said day, the fourth of October nineteen hundred and sixty-six, at 5:10 p.m. I was, I arrived at building number sixty-two, second floor, of Lloréns Torres Housing Project, in Santurce. Some relatives live there, and when I arrived at the entrance of the apartment I met one of my relatives who was at that time speaking to Melesia Prince, and who told me at that moment: 'Look, Daniel, you like to gamble "wajú", they call it so, Melesia has . . . .' " The agent testified that then he said "if you have the prize for tomorrow, give me four pieces" and that defendant "put her hand under her dress, on her chest, and took out five pieces of No. 772. Then I told her, only four. And I tore off one piece and delivered it to her and I kept four pieces and she charged me one dollar." The prosecuting attorney then shows him the pieces which defendant allegedly

sold to him and he testifies "because that same day I 'printed' in my own hand defendant's name. That day I did not print her name, because it was the next day when I found out about her name. But I did jot down the day and the time and the initials."

Referring to the transaction of October 11, the agent testified that "said day, at 6:10 p.m., that afternoon, I was acting as undercover agent and I carried out a bolipool transaction with Melesia Amelia Prince in Luis Lloréns Torres Housing Project, in Santurce, near building No. 72 . . . . I was in that place, and when I saw her she was sitting on a bench near building No. 72 talking to a certain person there, whom she knew. I called her and asked her whether she had bolipool and she answered yes. Then I told her to sell me four pieces. Then she told me: 'let us go there, near the entrance of building number seventy-two . . . .' " They went to the entrance hall of building number seventy-two and "from her skirt, from a pocket, she took out several bolipool sheets and took a four-piece sheet, No. 729 and delivered them to me and I gave her one dollar. I paid one dollar for the page." He then identified the four bolipool pieces which allegedly Melesia Amelia Prince had delivered to him on October 2. The prosecuting attorney announces that he submits the case with the aforerecited evidence.

Appellant offered evidence to establish that she works in a household and that her husband earns enough wages so that it is unnecessary for her to engage in selling bolita or bolipool numbers.

The trial judge acquitted her of the charge corresponding to October 4. In so doing he stated: "Because of the manner in which, according to the evidence, the first transaction on the fourth of October nineteen hundred and sixty-six was carried out the court has reasonable doubt and freely acquits defendant as to the first charge of the information." However, it found her guilty of the second charge. We do not

find reasonable justification to acquit her of one charge and find her guilty of the other. The manner of carrying out the transaction was similar on both occasions and if we consider the fact that the information charged the possession of lists of three-digit numbers and the agent testified at the trial that what happened was that defendant sold four bolipool pieces to him, we do not believe that defendant's conviction was justified.

The judgment of May 15, 1967 rendered by the Superior Court, San Juan Part, will be reversed and defendant will be freely acquitted.

It was so decreed and ordered by the Court as witnesses the signature of the Chief Justice. Mr. Justice Rigau, Mr. Justice Ramírez Bages, and Mr. Justice Torres Rigual dissented. Mr. Justice Ramírez Bages, with whom Mr. Justice Rigau concurs, dissented in a separate opinion.

(s) LUIS NEGRÓN FERNÁNDEZ
*Chief Justice*

I attest:
(s) JOAQUÍN BERRÍOS
*Clerk*

—O—

MR. JUSTICE RAMÍREZ BAGES, dissenting.

San Juan, Puerto Rico, March 20, 1969

I dissent from the decision in this case reversing appellant's conviction of the second charge for the possession of a list of three-digit numbers utilized in the unlawful game of bolipool, said material being connected with the practice of said unlawful game.

The grounds on which said reversal relies are, in synthesis, that there is reasonable doubt which precludes appellant's

conviction because (1) the manner in which the transaction was carried out was similar to that of the other charge of which appellant was acquitted and (2) appellant was charged with the possession of lists of three-digit numbers and what the agent testified was "that what occurred was that defendant sold four bolipool pieces to him. . . ."

(1) The evidence shows that the doubt which justified the acquittal in the first count was based on the fact that appellant delivered four pieces of No. 772 to the agent, but the pieces identified by the agent as those corresponding to this operation consisted of a slip printed on pink paper containing four pieces of *number 729 not of number 772.*

However, as to the second charge, the agent testified that he bought from appellant four pieces of number 729, and this was verified when the agent identified a slip of white paper, which was admitted in evidence, printed with four pieces of number 729 duly identified by the agent as the ones he received from appellant and for which he paid $1.00. Therefore the trial judge did not have any ground to make him doubt, as with respect to the first charge, that appellant committed the offense charged in the second count.

(2) Like in *People v. Adorno Medina,* 92 P.R.R. 538 (1965) the evidence in this case does not reveal a variance between the information (possession of a list of three-digit numbers utilized in the unlawful game of bolipool) and the evidence (four bolipool pieces) since the material specified in the information and that appearing from the evidence constitute the same bolita or bolipool material.

Therefore, I believe the Court should have affirmed the judgment of May 15, 1967 rendered in this case by the Superior Court, San Juan Part.